```
            UNITED STATES DISTRICT COURT
                DISTRICT OF HAWAII
```

| | |
|---|---|
| TYLER GRENIER, Individually, and JENNA GRENIER, Individually and as Next Friend of J.A.G., a minor,<br><br>        Plaintiffs<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | CIV. NO. 22-00396 LEK-KJM |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. ADAM LEVY, M.D., [FILED 7/1/24 (DKT. NO. 110)]**

This matter arises out of a medical malpractice action filed by Plaintiffs Tyler Grenier, individually, and Jenna Grenier, individually and as next friend of J.A.G., a minor, (collectively "Plaintiffs") against Defendant United States of America ("Defendant") for alleged medical negligence at Tripler Army Medical Center ("Tripler") related to the medical care by Defendant's employees for prenatal care and labor of Plaintiff Jenna Grenier ("Jenna"), and the subsequent delivery of J.A.G. See Complaint, filed 8/29/22 (dkt. no. 1). Severe physical injuries sustained by Jenna Grenier and J.A.G. are alleged as well as the negligent infliction of emotional distress to Plaintiff Tyler Grenier ("Tyler") and Jenna; Plaintiffs' loss of filial consortium; and Tyler's loss of spousal consortium. [Id.

at ¶¶ 59-73.] In the instant motion, Defendant seeks to exclude certain portions of opinions rendered by Plaintiffs' expert witness, Adam Levy, M.D., because: his opinions regarding estimated fetal weight are unreliable; his opinions regarding Jenna's operative delivery and using forceps resulting in excessive force are unreliable; his opinions about obtaining Jenna's informed consent are unreliable; his opinions that Justin Pilgrim, D.O., and Asha Mada, D.O., were unqualified or incompetent are unreliable; his opinions that the medical care rendered to repair Jenna's laceration injury are unreliable; and his opinions about the cause of the minor plaintiff's injuries are unreliable and his deference on causation to a neonatologist acknowledges his lack of expertise. [Def.'s Motion to Exclude the Expert Report and Testimony of Dr. Adam Levy, M.D., filed 7/1/24 (dkt. no. 110) ("Levy Motion"), Mem. in Supp. at 4-26.]

Plaintiffs filed their opposition on August 13, 2024. [Pls.' Memorandum in Opposition to Defendant United States of America's Motion to Exclude the Expert Report and Testimony of Dr. Adam Levy, M.D., filed 8/13/24 (dkt. no. 141) ("Mem. in Opp.").] Plaintiffs argue that Dr. Levy's opinion that Defendant's physicians failed to appreciate the risk for delivery complications because pre-delivery fetal growth was beyond the norm comports with accepted medical literature and therefore his opinion that the physicians who chose to deliver

2

with forceps fell below the standard of care is reliable. [Id. at 9-10.] As to Dr. Levy's opinions regarding operative vaginal delivery, Plaintiffs argue that they are based on medical records and literature, and thus reliable. [Id. at 10-12.] Plaintiffs argue that Dr. Levy's opinion that Jenna was not given a meaningful choice as to the method of delivery is "consistent with the modern standards of the medical community, his own deposition testimony, and thus [is] reliable and should not be excluded." [Id. at 14.] As to Dr. Levy's opinions regarding the standard of care provided by Drs. Pilgrim and Mada in proceeding with forceps delivery, Plaintiffs point to his education, work and training in the area of high-risk obstetrics in a teaching hospital as qualifying him to render his opinions and submit that qualifications go to weight and not admissibility. [Id. at 14-15.] As to Dr. Levy's opinion that the repair of the perineal laceration was done incorrectly, Plaintiffs submit that he is qualified to opine on the repair based on his education, training and experience. [Id. at 15-16.] Plaintiffs submit that Dr. Levy's opinions "regarding the traumatic birth being the cause of injuries to J.A.G. and his mother" are based on risks identified in medical literature and thus reliable. [Id. at 16-17.]

  Defendant filed its reply on August 20, 2024, and argues that Dr. Levy's opinion based on the estimated fetal

weight at thirty-six weeks does not reflect the current standard of care; there is no physical evidence to support Dr. Levy's opinions that the forceps were placed incorrectly, were applied with excessive force, or should not have been used at all; Dr. Levy's opinion regarding informed consent is not supported by medical literature; Dr. Levy's opinions about Tripler's providers are based on pure speculation; Dr. Levy's opinion about the laceration repair fails to point out any medical literature supporting his opinions; and, because Dr. Levy deferred on the issue of the minor plaintiff's injuries to a neonatologist, he does not have the qualifications necessary to provide opinions on what caused these injuries. [Def.'s Reply in Support of the United States' Motion to Exclude Expert Report and Testimony of Dr. Adam V. Levy, M.D. [ECF No. 110], filed 8/20/24 (dkt. no. 146).]

As follows, the Levy Motion is granted as to Dr. Levy's opinions on informed consent and any motivations by Tripler's physicians because these opinions are speculative, and as to Dr. Levy's opinion as to the cause of the minor plaintiff's injuries because he is not qualified to give an opinion. The Levy Motion is denied in all other respects.

## **STANDARDS**

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness

4

is sufficiently "qualified as an expert by knowledge, skill, experience, training, or education"; (2) the "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (3) "the testimony is based on sufficient facts or data"; (4) "the testimony is the product of reliable principles and methods"; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702. A trial judge is required to apply a gatekeeping role to expert witness testimony. White v. Ford Motor Co., 312 F.3d 998, 1007 (9th Cir. 2002) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003). The Rule 702 inquiry under Daubert, however, "'is a flexible one,'" and the "'factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" Id. (quoting Kumho Tire, Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)). To determine reliability,

> [s]cientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." Clausen v. M/V New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003). The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595 (1993). Courts must determine whether the

5

> reasoning or methodology underlying testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue. Id. at 592-93. Among the factors considered in determining whether to admit expert testimony under Rule 702 are: (1) whether the expert's theory or method is generally accepted in the scientific community; (2) whether the expert's methodology can be or has been tested; (3) the known or potential error rate of the technique; and (4) whether the method has been subjected to peer review and publication. Id. at 593-94.

Zucchella v. Olympusat, Inc., CV 19-7335 DSF(PLAx), 2023 WL 2628107, at *1 (C.D. Cal. Jan. 10, 2023). "[A] trial court has broad latitude in determining whether an expert's testimony is reliable," as well as in deciding how to determine the reliability of that testimony. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (citation and internal quotation marks omitted). In applying Daubert to physicians' testimony,

> "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable," but it need not be conclusive because "medical knowledge is often uncertain." "The human body is complex, etiology is often uncertain, and ethical concerns often prevent double-blind studies calculated to establish statistical proof." Where the foundation is sufficient, the litigant is "entitled to have the jury decide upon [the experts'] credibility, rather than the judge."

Primiano v. Cook, 598 F.3d 558, 565–66 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (alteration in Primiano) (footnotes and citations omitted).

6

To be admissible, evidence must be relevant. See Fed. R. Evid. 402. "'Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'" Primiano, 598 F.3d at 565 (quoting United States v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006)). The facts that the expert relies upon for his or her opinion is not an issue of admissibility:

> "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (quoting Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broad. Corp., 357 F.3d at 865. The Court agrees many of Nutten's assumptions about Dykzeul's lost earnings with Charter are rosy. But they are not entirely unfounded and Charter's concerns about the basis of the report can be raised and addressed on cross examination. See Primiano, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Dykzeul v. Charter Commc'ns, Inc., CV 18-5826 DSF(GJSx), 2021 WL 4522545, at *7 (C.D. Cal. Feb. 3, 2021) (alteration in Dykzeul).

## DISCUSSION

Dr. Levy offers ten expert opinions in his expert report. [Levy Motion, Declaration of Dana A. Barbata, Exh. 1

7

(letter from Dr. Levy to Plaintiffs' counsel dated 3/2/24 (dkt. no. 110-3) ("Levy Expert Report")).] These opinions, in pertinent part, are:

>1.  Mrs. Grenier was a diabetic and had an ultrasound . . . . [There was rapid fetal growth.] This would make an induction of labor risk excessive and a cesarean delivery should be advised. Further, an operative vaginal delivery would be contraindicated and should hot have been presented as an option.
>
>2.  In the presence of diabetes that is not well controlled, and likely macrosomia, a reasonable OB/GYN provider would advise delivery by cesarean with the patient and not include operative vaginal delivery as an option.
>
>3.  After pushing for more than 2 hours, the fetus was still in the midpelvis at maximum 1+ station . . . . Given all the factors with this particular patient, an operative delivery was **contraindicated**.
>
>4.  There is little possibility, while in labor and pushing, that a patient can realistically choose between the significant risks of an operative delivery and a cesarean delivery. Processing such complicated and difficult risk factors is challenging even without labor and the exhaustion from pushing. Expecting that a patient has the knowledge and experience to process such information is naive. That is why physicians make recommendations to their patients. In this case, that recommendation should have been a cesarean delivery, **not presented as an option**. Giving options implies that the risks are nearly equal. In this case, they were not equal and therefore

      discussing options was both foolish and below the standard of medical practice.

5. Dr's notes claim to consent Mrs. Grenier to a trial of forceps delivery. In her postpartum notes, the patient states that she has read the record and that no such consent was ever obtained from the patient. In fact she states clearly that she requested a cesarean delivery.

6. A mid-forceps delivery was then performed with the resultant injuries to mother and child noted above. This was the most **egregious** of actions taken by the doctors in this case. Most mid-forceps deliveries have been abandoned by reputable OB/GYN providers due to increased risk of birth and vaginal injuries . . . . It was a **foreseeable outcome** that both mother and infant suffered severe birth and vaginal trauma.

7. A forceps delivery resulting in both fetal scalp factures and full thickness scalp lacerations is indicative or excessive force and improper placement of forceps. This procedure was not performed by an individual with the skills to know proper placement and the maximum force to apply . . . . These doctors failed to exercise skill and thoughtfulness in this operative vaginal delivery. This is yet another breach in the standard of care.

8. This type-one diabetic patient with a likely >4500g fetus expressed her desires for a cesarean delivery. Her expressed desires were ignored. This team of doctors embarked on this misadventure in their own desires to perform an operative vaginal delivery which may have been related to Dr. Mada's need to complete her ACGME required operative vaginal delivery numbers allowing her to graduate from her residency program. This

>> bias would have contributed to encouraging an option which was contraindicated.
>
> 9. The attending supervising doctor, Justin Pilgrim, is a Reproductive Endocrinology expert and reports very little current experience with operative vaginal deliveries. Further, he admits to not having been informed of the fetal weight and rapid fetal growth as not by Dr. Nader Rabie, her perinatologist. Depth and significant degree of recent experience is a prerequisite to operative vaginal delivery privileges in hospitals across the USA. It appears that Dr Pilgrim lacked recent experience and therefore should have declined to engage in an operative vaginal delivery. A cesarean delivery should have been advised by Dr. Pilgrim as the supervisor and he should have known that an operative delivery was contraindicated. Also, vacuum and/or forcept [sic] use should not have been presented to the patients as options by Dr Mada.
>
> 10. Mrs. Grenier's 4th degree laceration was preventable. Further, skilled and proper repair of the 4th degree laceration should have resulted in good healing. Instead, this repair broke down which is quite rare if the repair had been performed property. Given all the facts in this case, I am led to believe that this repair was also **not** skillfully done resulting in failure and breakdown.

[Levy Expert Report at 3-4 (emphases in original).] Additionally, Dr. Levy opines that "[t]he breaches of the standard of care of [J.A.G.] has caused brain damage" and that "cesarean delivery would have prevented both the newborn birth injuries and maternal injuries in this case." [Id. at 4.]

10

Defendant does not challenge Dr. Levy's opinions as being irrelevant nor that he lacks qualification in the field of obstetrics and gynecology. Dr. Levy's opinions relate to the issue of medical standard of care. If he has misconstrued the medical records, or his analysis is otherwise shaky, then pointing out any such failures is appropriate for cross-examination and not exclusion where the expert's qualifications and relevance of his opinions are not in issue. However, because Dr. Levy has deferred to a neonatologist as to the cause of the minor plaintiff's injuries, he is not qualified to render opinion testimony that the physicians' breaches of the standard of care for the minor plaintiff "has caused brain damage among the multitude of injuries that are currently being treated and will require further treatment far into the foreseeable future[,]" and that opinion is excluded. See id. His opinion expressed in paragraph 5 of the Levy Expert Report refers to doctor's notes and Jenna's statements about whether she gave informed consent; see id. at 3; this information is factual and does not require the assistance of an expert as required by Rule 702, and thus is excluded. His opinion at paragraph 8 of the Levy Expert Report about Dr. Mada's motivations and his conclusion that Jenna's expressed desire for cesarean delivery was ignored both are speculative at best and thus must be excluded. See id. at 4.

11

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Exclude the Expert Report and Testimony of Dr. Adam Levy, M.D., [filed 7/1/24 (dkt. no. 110),] is GRANTED IN PART AND DENIED IN PART. Specifically, it is GRANTED as to any opinions about the cause of the minor plaintiff's injuries, and opinions expressed in paragraphs 5 and 8 of the Levy Expert Report and is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, September 5, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**TYLER GRENIER ET AL. VS. UNITED STATES OF AMERICA; CIVIL NO. 22-00396 LEK-KJM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. ADAM LEVY, M.D., [FILED 7/1/24 (DKT. NO. 110)]**